A. Gilbert Formel v. Commissioner.
Formel v. Commissioner
Docket No. 22158.
United States Tax Court
1950 Tax Ct. Memo LEXIS 111; 9 T.C.M. (CCH) 782; T.C.M. (RIA) 50221; August 31, 1950
A. Gilbert Formel, pro se. Oscar L. Tyree, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined a deficiency in income tax for the year 1945 in the amount of $1,663.18. The deficiency results from *112 disallowances of three deductions, and the petitioner alleges that each determination has been made erroneously. The questions to be decided are (1) whether the petitioner is entitled to a loss deduction of $253 under section 23(e) of the Internal Revenue Code because customs officials in Soviet Russia confiscated that sum when petitioner departed from a port in that area; (2) whether the petitioner is entitled to deduct $3,500 which represents, allegedly, the American dollar equivalent of expenditures in rubles for food purchased in a country in Soviet Russia where the petitioner was working; and (3) whether the petitioner is entitled to deduct $135, the dollar equivalent of rubles spent to purchase a pair of boots suited to the cold climate where the petitioner was working. The petitioner concedes that the respondent properly disallowed $585 of a deduction claimed in the return. The petitioner's return for the year 1945 was filed with the collector for the sixth district of California. Findings of Fact The petitioner is a construction engineer. He is married, and his family consists of his wife and one child. The petitioner's work sometimes requires that *113 he move his residence to or near the place of his work. The petitioner and his family usually live in the vicinity of New York City excepting when it is necessary for them to move temporarily to the location of petitioner's employment. Prior to 1940, the petitioner and his family resided in or near New York City. In 1940, the petitioner became an employee of E. B. Badger & Sons Company, which has its principal place of business in Boston, Massachusetts. Petitioner was employed by Badger & Sons under this contract for about three years. Badger & Sons' business is primarily the design and construction of oil refineries and chemical plants. Badger & Sons obtained a contract in 1941 to do construction work at Plum Brook Ordnance Works in Sandusky, Ohio. Petitioner became a resident manager at Sandusky, and his family moved to Sandusky in 1941. The furniture of the family was left in storage in New York City. When the petitioner first went to Sandusky, his compensation from Badger & Sons included an allowance for living expenses in addition to salary. After the petitioner's work was established in Sandusky, his compensation was limited to salary payments. The petitioner and his family *114 resided in Sandusky for about two years, from 1941 until September of 1943. In 1943, Badger & Sons received a contract from the Russian Government to design a gasoline refinery plant which was to be built at Guriev, Kazakhstan, which is located on the Caspian Sea at the mouth of the Ural River. This contract, initially, was arranged by the Treasury Department of the United States Government under lendlease assistance to Russia, and it was related to the war effort. Also, under the contract, Badger & Sons was to purchase materials to be used in the construction of the plant. The Russian Government was to make its own arrangements for the construction of the plant and for employment of workers, but Badger & Sons agreed to send some trained personnel to Guriev to supervise the construction work. Petitioner agreed to go to Guriev. Under a contract with Badger & Sons and the Russian Government, the petitioner was to be paid, by Badger & Sons, a salary of $15,000 per year, plus all of his expenses to and from Guriev. The contract of employment of petitioner was between himself, Badger & Sons, and the Russian Government. Upon arrival at his destination, petitioner was to pay all of his *115 expenses out of his income. Petitioner's compensation for his services was paid monthly to his account in a New York City bank by Badger & Sons. Badger & Sons was to be reimbursed by the Russian Government for all or part of this expense. The petitioner departed from New York City in November of 1943 to go to Guriev, and he arrived there in December of 1943. He remained in Guriev until September of 1945. The petitioner could not take his family with him to Guriev because of war-time restrictions upon the issuance of passports. Prior to his departure from the United States in November of 1943, the petitioner rented an apartment for his wife and child at Great Neck, Long Island, New York. He took his furniture out of storage and moved it into the apartment, and he established his family in the apartment. The petitioner lived with his family in the apartment for a short period of time prior to his departure. When the petitioner departed from the United States, it was his intention to remain in Russia for an indefinite period of time, depending upon the amount of work and the length of time required to do the work in which he expected to be engaged. Petitioner's contract of employment *116 was not for any stipulated period of time. In Guriev, the petitioner's work was that of supervisor and consultant, and he was in charge of operations. He was located at Guriev. He had an office (of a crude sort) in Guriev. He rented a post office box. Prior to going to Russia, the petitioner believed that he might wish to locate there permanently and have his family join him there. But after he had been in Guriev for a short time, he decided that he would not have them there "by any manner of means." Shortly before September of 1945, the petitioner decided to terminate his work in Guriev and return to the United States. His reason for leaving was that he did not like conditions there. Upon his return to New York in 1945, the petitioner resumed his residence with his family in New York. At the time of the filing of the petition in this proceeding, and of the trial of this proceeding, the petitioner and his family resided in Great Neck, Long Island, New York. The income tax return of the petitioner for the year 1945 was filed in Hollywood, California, on March 9, 1946, because the petitioner was there temporarily at that time. When the petitioner reached Guriev, an agreement *117 was made by him with officials of the Soviet Government that they would pay him "a certain sum of rubles" every month. The arrangement was a customary one which was made with all foreign employees who came into the country. Petitioner did not have to pay anything for the rubles. The rubles were an allowance of some sort. Otherwise, the petitioner deposited American express checks which he had taken into the country in a bank in Guriev, for which he was given rubles in exchange. Also, petitioner carried a letter of credit which provided for drafts on Badger & Sons. Petitioner, through the letter of credit, drew funds against an account of Badger & Sons during the time he was in Guriev. Badger & Sons, in turn, deducted corresponding amounts from petitioner's salary payments which were deposited in petitioner's bank account in New York. Petitioner's expenses, in Guriev, were for food, chiefly. Lodgings were provided by the Soviet Government. The petitioner was in Guriev during the first eight months of 1945 - January through August. During that period, he purchased food for himself in the open market, at bazaars, for cash or by trading a commodity which he had for other commodities. *118 Also, he purchased some food in state operated stores. The petitioner has estimated that he spent for food, in Guriev, the total amount of about 18,900 rubles, which he estimates had an exchange value in 1945 of $3,500, American dollars. The amount of $3,500 is an estimate. The petitioner arrived at his estimate by taking into account the low purchasing power of the American dollar, in Guriev, under the official exchange rates. Or, stated in another way, the petitioner has estimated that he spent $3,500 for food during the period in question due to inflationary commodity prices in Guriev. The petitioner does not have either receipts for his food purchases or any record of the amount of rubles or American dollars which he spent for food during the period in question. He did not keep an account book record of his food purchases in Guriev in 1945. Due to sub-zero temperatures in Guriev during the winter months, felt boots are worn in preference to boots made of leather, because they provide better protection from the cold. When the petitioner entered Russia, he was provided with certain clothing, but he had to pay for replacements from his own income. The felt boots which the petitioner *119 received originally wore out. He purchased a new pair of felt boots in 1945 for about 650 rubles, or $135, in American dollars, at the then rate of exchange. The felt boots constituted an item of personal clothing. Such foot covering is worn, in general, by the local inhabitants, if they are able to purchase them. They were not part of any special clothing or equipment necessary in the performance of petitioner's work. They were a part of petitioner's personal clothing which was necessary because of the climate. When the petitioner left Guriev, he gave the boots to someone who needed them. The petitioner proceeded to depart from Russian territory on or about September 7, 1945, by boat from the port of Baku en route to Pahlovi, Iran. Russian customs officials, in the course of their duties, examined the petitioner's luggage at the dock. The customs officers determined that the petitioner could not take many items of property out of the country. The items comprised personal possessions and effects, a document, some icons, travelers' checks, and $253 in American money. The petitioner appealed to other customs officials, and others, seeking to recover the property which had been taken *120 over by the customs officers. He recovered all of the items excepting the icons, the document, and the $253. He continued his efforts to recover the money. While he was so engaged, an airplane arrived upon which he was able to secure space, and he departed by plane. Subsequently, the petitioner recovered the document through the efforts of the State Department of the United States Government, but he has not recovered the $253 up to the present time. Also, he made a request for assistance to a United States official in Teheran, Iran, without any success. And he sent telegrams to representatives of Badger & Sons, and others, in Moscow without success. Opinion The petitioner claims three deductions from his income for 1945 for amounts spent in Guriev, Kazakhstan, S.S.R., within the jurisdiction of the U.S.S.R., hereinafter referred to as Russia as a matter of convenience. The petitioner claims deductions of $3,500 for food, $135 for one item of personal clothing, and $253 for money confiscated by customs officials. The petitioner appeared in this proceeding without counsel. He is not a lawyer, and he is not acquainted with the provisions of the Internal Revenue Code or with rules *121 of law which apply to the questions which his claims for decutions present. He has not filed a brief. It is obvious that the deduction of $253 is claimed as a loss. The deduction of $3,500 appears to be claimed either as a loss because inflation in Russia resulted in the petitioner's having to pay a great deal more for food in Russia with the rubles for which his American dollars could be exchanged at the foreign exchange rates than he would have had to pay for food in the United States, if he had been in the United States, or as "traveling expense" while away from home in the pursuit of business, under section 23(a)(1) of the Code. The deduction for $135 appears to be claimed as a business expense deduction. The petitioner deducted $3,500 as expenses for "living in U.S.S.R. 35 weeks at $100 a week" and $135 for special protective clothing for living in the U.S.S.R. These deductions were taken in the return under the caption "Miscellaneous." The respondent contends that the expenditures for food are not deductible under the rules of several cases which have established the meaning of the clause "while away from home in the pursuit of a trade or business" in section 23(a)(1)(A). The *122 respondent contends that the expenditure for a pair of felt boots was a personal expenditure, and that, therefore, the deduction is specifically denied by the provisions of section 24(a)(1) of the Code, which provides that in computing net income, no deduction shall be allowed in any case in respect of personal expenses. The respondent contends that the alleged "loss" of $253 was neither a loss from "other casualty" within the meaning of section 23(e)(3) of the Code, or a loss from theft, and that, therefore, the loss does not come within the scope of section 23(e)(3) of the Code. The petitioner has testified in this proceeding. His testimony has been given careful and full consideration. As a matter of law, as the petitioner undoubtedly understands, the burden of proof rests upon him to introduce evidence in support of the claimed deductions. None of the claimed deductions is allowable as a matter of law, and the respondent's determinations must be sustained. The reasons for the conclusion with respect to each of the claimed deductions are set forth hereinafter. A. The claimed deduction of $253, the seizure of money by Russian customs officials. The petitioner must establish, *123 first, that he has sustained a loss and, second, that the loss is one for which there is a statutory provision for allowance of a deduction. The petitioner has not established either one of these things. With respect to the first requirement that there must be proof of a loss, the following is pertinent. The taxpayer has the burden of proof. We need not dwell upon the failure of the petitioner to meet the first requirement, because there is no statutory provision under which a loss of this kind can be deducted, as will be shown hereinafter, assuming that a loss has been sustained. But it should be noted that the petitioner has not shown that he exhausted remedies to recover the funds, or that there are no available remedies. We assume that there are available procedures which can be followed to recover property retained by the customs officials of the foreign country in question. In 1945, as at the present time, the United States Government recognized the Government of Russia and maintained diplomatic relations with Russia. The petitioner was anxious to depart from Baku; and although he made such efforts as were possible before leaving Baku to recover his money, those efforts were *124 limited. The petitioner has testified that a plane arrived in Baku; that he was able to obtain a seat in it; and that he proceeded immediately on his way, without any further delay to make further efforts to recover his money. The petitioner feels aggrieved, but the evidence which is before us does not establish that the petitioner has pursued all of the official procedures which are followed ordinarily where a person has a dispute with the customs officials of a foreign country. We cannot accept as proof that all remedies to recover the money have been exhausted, the petitioner's personal conclusion that the pursuit of efforts to make recovery through official channels would be fruitless. The petitioner is not an expert on the subject, and he did not call an expert to give the Court an opinion about the feasibility of following through the official course of action. If we were to assume for purposes of argument that recovery has been found to be impossible, which we do not do, we would then come to the question of whether the loss is deductible under some provision of the Internal Revenue Code. We now turn to that question. It is well established that a tax deduction is a matter *125 of legislative grace rather than a matter of personal right. The taxpayer must show that the Congress has enacted some statutory provision which provides for a tax deduction for the item in dispute, and then he must show that the item in question comes within the statutory provision. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435. If there is no provision allowing a tax deduction for the item in question, no deduction can be allowed, no matter how aggrieved the taxpayer is, or how equitable it may appear that it would be to allow a deduction for the item. The only section of the Internal Revenue Code under which the claimed deduction can be considered is section 23(e) of the Code which provides as follows: "[Sec. 23(e)] "(e) LOSSES BY INDIVIDUALS. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - "(1) if incurred in trade or business; or "(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or "(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, *126 or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return." The item in question does not come within subsections (1) or (2) of section 23 (e). We do not understand that petitioner contends that it does. The question to be decided is whether the item comes within subsection (3), i.e., whether the alleged loss arose from fire, storm, shipwreck, or other casualty, or theft. The petitioner claimed the deduction in his income tax return as a loss from a casualty or theft. The alleged loss did not arise from theft. The petitioner is of the opinion, it appears, that the loss arose from an illegal seizure of his money, and it appears that he feels as though he has been robbed. His contentions are not clear. He has filed no brief. However, he admits that the money was retained by customs officials during the course of their official examination of his belongings while he was passing through the customs of the foreign country he was in and from which he was departing. He has not introduced any evidence to show that the retention of his *127 money was illegal, and his admission, as above stated, is contrary to his contention that the seizure was illegal. Unless the petitioner can establish that the retention of his money was illegal, this Court cannot determine whether the loss arose from theft. There is no evidence that there was theft, although we are able to understand how the taxpayer feels about the incident. The claimed deduction does not come within the theft provision of subsection (3). The remaining question is whether the alleged loss comes within the scope of the term "casualty" as it is used in subsection (3). The meaning of the term "casualty" in section 23 (e) has been construed in several cases. In order that a loss sustained by an individual may be deductible from gross income as a "casualty" under subsection (3) of section 23 (e), it must be shown that the alleged "casualty" was "of a similar character to a fire, a storm, or a shipwreck." Fred J. Hughes, 1 B.T.A. 944, 946. This is well understood by lawyers to be the doctrine of ejusdem generis - of the same class. "In the construction of laws [or statutes], * * *, when certain things are enumerated, and then a phrase is used which might *128 be construed to include the other things, it is generally confined to things ejusdem generis * * *." Cyclopedic Law Dictionary, 3d ed., p. 377, definition of ejusdem generis. "Casualty" has been variously defined, but one legal definition is: "Inevitable accident. Unforeseen circumstances not to be guarded against by human agency, and in which man takes no part." (Cyclopedic Law Dictionary, p. 152.) Subsection (3) of section 23 (e) enumerates as the causes for deductible "casualty" losses, fires, storms, shipwreck. They are disasters. A loss from "other casualty" means from a like cause. The loss of money through seizure by the customs officers of a foreign country in the course of their execution of their official duties is not a loss from a casualty as that term is used in section 23 (e) (3). Again, even if the seizure was an illegal seizure, as the petitioner contends, that is not a "casualty" within the meaning of the statutory provision. It has been held that an illegal seizure of liquor by police officers of a locality in our country is not a "casualty," Fred J. Hughes, supra; and that the seizure of an automobile owned by a citizen of the United States by *129 the German Government after the outbreak of the war in 1914 was not a "casualty." Thomas F. Gurry, 27 B.T.A. 1237. Furthermore, we do know whether the seizure of the petitioner's money by the Russian customs officials was legal or illegal. The petitioner seeks the deduction under section 23(e)(3), according to his income tax return. He will recognize readily from the foregoing that the alleged loss does not come within the scope of that section of the Code. We do not intend to deal with abstractions. If the petitioner is not claiming that his alleged loss comes within the meaning of the term "casualty" as it is used in the statute, the foregoing is an unnecessary delineation of the law. But, lacking a clear presentation of his argument by the petitioner, we have given him an explanation of the status of his contention as far as it is understood. We have searched for a provision of the Internal Revenue Code under which his deduction could be allowed. Section 23 (e) of the Code is the only section relating to the deduction of losses by individuals. The petitioner's loss does not come within that section. Therefore, we must sustain the respondent's disallowance of the *130 deduction. B. The claimed deduction of $135, the cost of felt boots. This deduction is not claimed as a loss. As we understand the petitioner's contention, it is claimed as an expense. If the cost of a pair of felt boots was a personal expense, it is not deductible from gross income, as the petitioner probably understands. Section 24 (a) (1) of the Code provides that no deductions shall be allowed for personal expenses. We believe that the petitioner claims this deduction as a business expense, paid in carrying on his business, under section 23 (a) (1) (A) of the Code. In order for this expense to be deductible, it must be shown that the felt boots were not for the petitioner's personal use, but were in the nature of special clothing required in his work and which he could not wear outside of his work. For example, it has been held that the cost of the uniform of an officer of a highway patrol is deductible. Commissioner v. Benson, et al., 146 Fed. (2d) 191. In that case officers of a highway patrol were required to furnish their own uniforms, which had to conform to specifications prescribed by the head of the patrol. The officers were required to wear the uniforms *131 while on duty, and they were not permitted to wear them outside of their official duties. The expense of the uniform was held to be a business expense, incurred to enable the officer to earn his salary as a traffic officer, i.e., incurred for the production of income. The cost of work clothing has been allowed as a business expense deduction in similar instances. See Helen Krusko Harsaghy, 2 T.C. 484, where the cost of a nurse's uniform was held to be deductible. But, it has been held in an unreported decision of this Court that a civilian seaman could not deduct the cost of uniforms where he was not required to wear them. In Louis Drill, 8 T.C. 902, the cost of work clothing was not allowed as a deductible business expense, even though the taxpayer's work was hard on his clothes, and he wore out or ruined clothes in his work, because the clothing in question "was not of a type specifically required by his employer. It was of a kind adaptable to general wear," p. 903. The reasoning of this Court in the Drill case was that since the clothing in question was of the kind which was "adaptable to be worn generally, away from work as well as at work," the cost *132 of the clothing could not be said to be an expense of doing the work or of earning income, and, therefore, was not a business expense. If wearing apparel is adaptable to general or continued wear - away from work as well as at work - the cost thereof is a personal expense. In this proceeding, the felt boots were not wearable only in petitioner's work. They were adaptable to general and continued wear during the cold season of the year. They were part of the petitioner's general winter clothing while he was in Guriev. The petitioner, obviously, claims that the cost of the boots is a business expense because the felt boots were not adaptable to general use in the United States where he lived when he returned. He left the boots in Guriev when he departed. He gave them away to someone who needed them. But the fact that the boots were an article of clothing which was special to the place where he worked does not afford him a deduction for the cost. Section 23 (a) (1) (A) allows as a business expense deduction the cost of meals and lodging "while away from home in the pursuit of a trade or business" as traveling expenses, but does not include the expenses of clothing. Furthermore, even *133 if the statutory provision could be construed to include the cost of clothing of the kind in question, deduction could not be allowed for the same reasons that the cost of food which the petitioner seeks to deduct is not allowable, as is set forth under the next issue, because of the meaning of the phrase "while away from home in the pursuit of a trade or business" in section 23 (a) (1) (A). C. The claimed deduction of $3,500 for food purchased in Guriev. We will assume, for purposes of argument under this issue, that the petitioner actually spent $3,500, American dollars, for food during the period in 1945, the taxable year, when he was in Guriev. The petitioner has the burden of proving the amount of the expense. He admits that the amount of $3,500 is an estimate, and that he did not keep records of his expenditures of rubles for food, from which he could compute, under foreign exchange rates, the amount of the expense in dollars. We may pass over this part of the issue, because the alleged expense is not deductible under section 23 (a) (1) (A) as "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of trade or *134 business; * * *." The respondent has correctly stated the law in his brief with respect to the meaning of the term "traveling expenses" as it is used in section 23 (a) (1) (A), and it is unnecessary for us to repeat here all that the respondent's counsel has reviewed very well in his brief. One contention of the petitioner, as we understand it, is that although he went to Guriev to do work there voluntarily, under a contract of employment, he was not allowed to take his family with him because the United States Government had imposed restrictions upon the issuance of passports during the war period, and the petitioner was unable to obtain passports for his wife and child. Since they could not accompany him, he was obliged to maintain a home for them in New York during his absence, which we understand the petitioner to assert caused added expenses, in addition to his living expenses in Guriev. We do not quite understand the logic of this contention. There is a well known saying that "Two can live as cheaply as one." Perhaps there should be added to that aphorism "in the United States." It appears that that would not have been true in petitioner's case if he had been able to take *135 his family to Russia. The petitioner has introduced in evidence some illustrations of the comparative costs of food in Russia and in the United States, which were compiled by Harrison Salisbury who wrote a book about his visit to Russia in 1944 entitled "Russia on the Way," and some other quotations of the prices of food in Russia in rubles and in American dollars, which were reported in the New York Times of December 16, 1947, were introduced in evidence. These schedules do not have such degree of pertinency as to be included, properly, in the findings of fact, but, of course, consideration has been given to them. From these schedules, it would appear to be true that it cost the petitioner less to maintain his family in New York and that he was saved expenses by the circumstance that his family had to remain there. For example, black bread cost $3 a loaf in Russia in 1944, as compared to 14 cents in New York. The petitioner has introduced the comparative food prices data to show, also, how he made the estimate that his own personal food expenses amounted to $3,500, and we have given consideration to the data. The question to be decided is whether the petitioner had "traveling expenses" *136 consisting of his food expenses while away from "home" in the pursuit of his business within the scope of section 23 (a) (1) (A). We cannot hold for the petitioner under this issue. His place of business was located in Guriev during the taxable year. He did not travel away from his post during the taxable year. Or, in other words, he was not away from his post in pursuit of his business. The cost of his food was a personal expense. Since it was not directly connected with the carrying on of the business of the petitioner or of his employer, it was not a business expense, "traveling" expense, or any other kind of business expense under the law as most recently stated by the Supreme Court of the United States in Commissioner v. Flowers, (1946) 326 U.S. 465. The respondent has cited in support of the correctness of his determination several cases, of which Bercaw v. Commissioner, (1948) 165 Fed. (2d) 521, and York v. Commissioner, (1947) 160 Fed. (2d) 385, have one factor in common with the circumstances with which the petitioner had to contend. In both of these cases, the taxpayers were unable to move their families to the places to which they *137 had gone to take up their duties of employment, and they were obliged to maintain separate residences for their families away from the location of their work, just as the petitioner had to do. The claims for deductions for the costs of meals of the taxpayers, for themselves, at their respective posts of duty were denied. In York's case, the court said succinctly: "A man's living expenses while he is carrying on his business at his regular place of business are personal and not business expenses. This is true even though he maintains, * * *, a place of abode so distant from his place of business that daily commuting is impossible." The court pointed out, further, in York's case, that neither the cost of maintaining a place of abode for a man's family away from the place where his work is, nor the cost of maintaining his family or himself in the same place where his work is, is an expense of doing business or producing income. All are personal expenses, despite the resulting inconveniences to the taxpayer and the additional personal expenses to him when his family cannot accompany him to the place where his work is located on a permanent or substantially permanent basis. Many taxpayers *138 have found confusing the use of the term "home" in section 23 (a) (1) (A) of the Code. The term has been construed in many cases to be nearly synonymous with "place of business." Each case stands on its own facts, of course. In this proceeding, the petitioner had gone to Guriev for an indefinite period of time. The evidence shows that his new and practically "permanent" place of business was in Guriev. He was not, therefore, traveling away from home in pursuit of his business during the taxable year within the meaning of the statute. It is held that the cost of petitioner's food while in Guriev during the taxable year, in the amount of $3,500, was a personal expense and is not deductible. We are unable to find any statutory provision under which the claimed deduction can be allowed. In the proceeding of S. E. Boyer, (1947) 9 T.C. 1168, a taxpayer claimed a loss deduction on account of the additional expenses which he incurred for meals, lodging, and other expenses in England and France during the years 1943, 1944, and 1945, which resulted from the depreciated purchasing value of English pounds and French francs at the "official" rates of exchange. The taxpayer was an *139 Army officer who was stationed in England and France. He was paid allowances for subsistence and quarters, in addition to his salary, in British pounds and French francs; but the payments in foreign currency were made at the official, or controlled, rates of exchange, which existed in England and France; and under those rates he received fewer pounds and francs than he would have gotten if he had paid foreign currency at the free, or open market, rates of exchange. He contended that he sustained losses as a result. This Court denied the claimed loss deduction because there is no statutory provision which allows such deductions. We refer to Boyer's case because the situation in that case bears some resemblance to the experience of the petitioner in making purchases of food with rubles in Guriev. The respondent's determinations are sustained. Decision will be entered for the respondent.